IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARROLL GREGG, )
    Petitioner, )
     )
    v. ) 2:13-cv-516
     )
MARIROSA LAMAS, et al., )
    Respondents. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Darroll Gregg for a writ of habeas corpus (ECF. 1) be dismissed and because reasonable jurists could not conclude that probable cause for appeal exists, that a certificate of appealability be denied.

II. Report:

Darroll Gregg, by his counsel, has presented a petition for a writ of habeas corpus. Gregg is presently serving a twenty to forty year sentence imposed following his conviction, by a jury, of Criminal Attempt–Homicide, Criminal Conspiracy-Homicide, Criminal Conspiracy and Aggravated Assault at No. CC 200901113 in the Court of Common Pleas of Fayette County, Pennsylvania. This sentence was imposed on November 13, 2009.[1]

An appeal to the Superior Court was filed in which the questions presented were:

1. Did the trial court err by denying Appellant's November 3, 2009 Motion for Continuance?

2. Was Appellant's conviction against the weight of the evidence?[2]

On July 20, 2010, the judgment of sentence was affirmed.[3]

---

[1] See: Petition at ¶¶ 1-5.
[2] See: ECF 9 at p.69.
[3] See: ECF 10 supplementing ECF 8.

1

On October 19, 2010, a counseled post-conviction petition was filed and relief was denied on March 16, 2012.[4] An appeal to the Superior Court was filed in which the issues presented were:

> I. Did the lower court err in denying the defendant's PCRA motions as defendant established newly discovered evidence that met all the elements to entitle him to a new trial?
>
> II. Did the lower court err in determining that defendant was represented by effective assistance of counsel where alibi witnesses were not interviewed, subpoenaed, located, or called to testify, and where defendant was not properly advised regarding the admissibility of his juvenile adjudications?[5]

On March 16, 2012 the denial of post-conviction relief was affirmed.[6] On December 27, 2012 leave to appeal was denied by the Pennsylvania Supreme Court.[7]

In the instant counseled petition, Gregg contends he is entitled to relief on the following grounds:

> A. Mr. Gregg was denied his Sixth Amendment right to the effective assistance of counsel because Trial Counsel did not subpoena one known alibi witness or investigate another alibi witness whom Mr. Gregg identified by a nickname. Trial Counsel had no reasonable basis for either decision. Trial Counsel did not subpoena the first witness despite warning signs that this witness would not appear on his own. As for the second witness, Trial Counsel did not bother to investigate this witness because he believed the first witness, whose availability for trial was uncertain at best, would be enough. Because Trial Counsel failed to secure the testimony of these witnesses, Mr. Gregg was forced to testify to his own alibi and subject himself to impeachment with his juvenile record. Judge Solomon found Trial Counsel's efforts to investigate and present Mr. Gregg's alibi defense reasonable because the alibi witnesses did not make themselves more available to the defense and because Trial Counsel only had a nickname for one of the witnesses. This decision was an unreasonable application of clearly established Federal Law.[8]

The background to this prosecution is set forth in the March 16, 2012 Memorandum of the Superior Court, citing the trial court's opinion:

> On March 18, 2009, Edward Harper heard a knock at his door shortly after 9:30 p.m. Through the peephole, Harper recognized the individual as Darrin Mackey and opened the door just wide enough to converse with Mackey. When Harper

---

[4] See: Petition at ¶¶ 8 and 11.
[5] See: ECF 9 at p. 103.
[6] See: ECF 8 at Exhibit 2.
[7] Id. at Exhibit 3.
[8] See: ECF 1 at ¶ III.

2

asked Mackey to leave, Mackey responded by loudly calling out Harper's name. At this point, Harper saw a second individual, who was unknown to him, sidestep out of the stairwell from the end of the hallway while wearing a bandana wrapped around his face and pointing a gun at Harper. Harper slammed his apartment door shut and pressed his body against the door. Harper ordered his wife and children to get on the floor and to call for help.

Harper heard a gunshot from the hallway, and felt the bullet come through the apartment door and through his left hand. Harper then heard several kicks on the door, followed by two more gunshots. Thereafter, Harper heard several more kicks and another gun shot [sic]. In total, Harper was shot through the door four times; in the left hand, in the chest, in the sternum, and in the head.

Harper testified that of the gunshots, one type sounded louder than the other, and that the louder one sounded more of a shotgun firing, rather than a handgun. Harper identified the second individual who "sidestepped" out of the stairwell as carrying a handgun.

Darren Mackey testified that on March 18, 2009, he was walking in Republic, Pennsylvania, when Stefan Fitzgerald stopped his car and picked up Mackey. Appellant was also riding in Fitzgerald's car. After driving around for awhile [sic], Appellant asked Mackey if he knew where to purchase weed. Mackey responded that they could buy weed from Harper. Appellant stated that he knew Harper and that [he and] Harper had "some type of family problem." Appellant then told Mackey that he wanted to "spank" Harper. [Mackey acknowledged that, in this context, to "spank" someone meant to shoot that person.] Mackey told Appellant and Fitzgerald that Harper was about to move out of town, to which Appellant responded that "he got to have money if he is about to move." Mackey explained that the plan was that the three of them would "bumrush" Harper to take the money from him.

Mackey was the first to enter the apartment building where Harper lived and went to his door and asked Harper for weed. While standing at the door, Mackey noticed that Harper got a "scared" look on his face and then slammed the door. Mackey turned around toward the stairwell and saw Appellant was carrying a shotgun and wearing a hood over his head and Fitzgerald had a revolver and was wearing a shirt sleeve to cover his nose and mouth. After Appellant and Fitzgerald fired shots into Harper's apartment door, the three assailants ran out of the building through the back stairwell and into Fitzgerald's car. After leaving the scene, Mackey suggested to hide the guns in a creek near a football field and the guns were put into the creek.

Several days later, Mackey showed the location of the guns to the police. Mackey identified a revolver as the gun used by Fitzgerald and the sawed off shotgun as the gun used by Appellant.[9]

---

[9] See: Id. at Ex. 2.

Petitioner now argues that counsel was ineffective for failing to call his alibi witnesses, Levi Jones and Tachicca Fitzgerald to testify on his behalf at trial.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

At the post-conviction hearing held on December 10, 2010 and continued to January 13, 2011, petitioner's trial counsel testified (TT.107-141) that his interview notes do not mention Fitzgerald but do mention Weezy and that he did not have a name for her (TT.110,123); that he filed an alibi notice and listed his witness as Levi Jones (R.110,111,112); that he spoke to Jones twice prior to trial and believed he would appear at trial voluntarily and for that reason did not subpoena him and that he does not subpoena witnesses when he has no reason to believe that the witness will not appear (TT.114,115,124,133) that Jones did not show for a pretrial meeting with counsel (TT.116,117); that he spoke to Jones twice on the morning of the trial (TT.118-119,120,136); that although counsel had no reason to suspect that Jones would not appear at trial, he failed to do so (TT.119,134); that as a result he unsuccessfully sought a trial continuance (TT.122-123); that as a result of a lack of an alibi witness he informed the petitioner that although he had no obligation to testify, if he failed to do so his alibi would

4

not come before the jury (TT.129) and that he believed that the petitioner understood that if he elected to testify his prior juvenile record would come into evidence even over his objection (TT.l29).

Following the post-conviction hearing, the court wrote:

With respect to the issue of an alibi defense, such a defense "places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party."

* * *

Levi Jones, an alleged alibi witness, testified at the PCA hearing that on the night of the attempted homicide he was with Petitioner … Although Jones knew it was very important to be a witness at Petitioner's trial, he never contacted anyone about testifying and failed to appear at an agreed upon meeting place to be transported to the trial. His only explanation as to why he did not appear at the meeting place is "I have no idea."

Further Jones testified that although he was about one mile from the Courthouse, knew that his friend was on trial, had spoken with Petitioner's counsel several times, and knew that it was important to appear at trial, yet he did not appear because he had other plans.

Also testifying at the PCRA hearing was Tachicca Fitzgerald, an alleged alibi witness, who has the nickname of "Weezy." According to her, on March 18, 2009, the evening of the shooting, she was with Petitioner and Levi Jones at the home of the mother of Levi Jones … Fitzgerald also testified that Petitioner did not know her given name, only her nickname, and she knew that she was an alibi witness, but no one ever called her to be a witness…

The testimony of Levi Jones and Tachicca Fitzgerald was not credible, either as to an alleged alibi witness or as to whether they were available and willing to testify for the defense. To the contrary, what their testimony establishes is that they were not willing to testify on Petitioner's behalf…

As to Jones and Fitzgerald being *willing* to testify for the defense, the record is devoid of any such testimony. As to Jones and Fitzgerald being available, their testimony establishes the opposite. The testimony of Jones makes it clear that he made himself unavailable. After agreeing, he failed to appear one month prior to trial to be interviewed and then, on the date of the trial, after agreeing, failed to appear at an arranged meeting place to be driven to Trial Counsel's office. Under the circumstances, if he truly was an alibi witness and was willing to testify for the defense, his explanation that he did not appear or come to the Courthouse because he had other plans is incredible. We also note, as to the issues of credibility, availability, and willingness, in Jones' affidavit, which is part of the

record, he swore that Trial Counsel never spoke with him, while his sworn testimony offered at the PCRA hearing is to the contrary.

Turning to alleged alibi witness Tachicca Fitzgerald, her testimony points to only one conclusion – that she was not willing to testify for the defense. Knowing Petitioner only knew her as "Weezy". She made no effort to contact anyone. Also, according to Fitzgerald, she did not learn that Petitioner had gone to trial until after the trial. If, in fact, she was with Levi Jones and Petitioner at the time this crime was committed, and was willing to testify for the defense, her testimony is also not credible…

With regard to the efforts of Trial Counsel, it is clear that he, and an investigator, attempted to subpoena Jones, and that the only name he had for Fitzgerald was "Weezy". It is also clear that Jones and Fitzgerald made themselves unavailable and were not willing to testify for the defense. Under these circumstances, and these facts, Trial Counsel cannot be found to have been ineffective (citation and pagination omitted).[10]

As the post-conviction court correctly observed, a witness is unavailable when he or she refuses to testify. Ross v. District Attorney, 672 F.3d 198 (3d Cir.2012). In addition, determinations of credibility rest with the fact-finder, here the post-conviction court. Marshall v. Lonberger, 459 U.S. 422 (1983); Hartman v. Deloy, 890 F.Supp.2d 498,505 (D.Del.2012)("it is well-settled that federal courts are not permitted 'to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial courts, but not by them'" (citations omitted)).

As a matter of law, the state court determined that the alibi witnesses were both unavailable and that if they had testified their credibility was lacking. We do not re-evaluate this determination here.

Counsel cannot be deemed to have been ineffective for having failed to call these unavailable witnesses and for this reason, his performance cannot be said to have been ineffective since there is no demonstration that but for counsel's inability to call alibi witnesses a difference result would have occurred. Shotts v.Wetzel, 2013 WL 3927730, C.A.3 (Pa).

Thus because the determinations of the state courts were in no way contrary to federal law as determined by the Supreme Court, nor involved an

---

[10] See: July 8, 2011 Opinion of the trial court at pp 12 -16, Ex. 4 to the answer.

unreasonable application of federal law, the petition here is without merit.

Accordingly, it is recommended that the petition of Darroll Gregg for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this  Failure to file timely objections will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell

Filed: September 11, 2013

United States Magistrate Judge